## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY YARGEAU, On behalf of herself and all others so similarly situated, <br><br> *Plaintiff,* <br><br> vs. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL HOUSING FINANCE AGENCY, WELLS FARGO BANK, N.A., <br><br> *Defendants.* | C.A. NO. <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.      The Representative Plaintiff Kimberly Yargeau, on behalf of herself and all others so similarly situated, brings this action as described in the paragraphs set forth herein. This class action is brought against Defendants: Federal National Mortgage Association (Fannie Mae); Fannie Mae's conservator and regulator, the Federal Housing Finance Agency (FHFA); and Wells Fargo Bank, N.A. (Wells Fargo), acting as agent of Fannie Mae and FHFA, for wrongful foreclosure of mortgages and sale of properties secured thereby, due to Defendants failure to provide homeowners adequate notice and opportunity for meaningful hearings, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United States. Therefore, accelerations, foreclosures and mortgagee's sales of the Representative Plaintiff and class members mortgages and properties are void.

2.      The Representative Plaintiff, on behalf of herself and all others so similarly situated, seek declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief as provided by law for Defendants wrongful acts.

## JURISDICTION AND VENUE

3.      This Honorable Court has subject matter jurisdiction over this action and all Defendants pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution and laws of the United States of America.

4.      Further, this Court has jurisdiction over this action pursuant to 12 U.S.C § 1452 (f)(2) because this case is brought against the Federal National Mortgage Association.

5.      The events giving rise to the claims stated herein occurred in the District of Massachusetts and this venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391.

6.      Venue is proper in this Honorable Court in that this Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

7.      Pursuant to Fed. R. Civ. P. Rule 23(a)(1), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable.

8.      Pursuant to Fed. R. Civ. P. Rule 23(b)(1), there are questions of law and fact common to the class.

9.      Pursuant to Fed. R. Civ. P. Rule 23(a)(3), the claims or defenses of the Representative Plaintiff are typical of the claims or defenses of the class.

10.      Pursuant to Fed. R. Civ. P. Rule 23(a)(4), the Representative Plaintiff will fairly and adequately protect the interests of the class.

11.      Pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A)&(B), prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to

the individual adjudications and may substantially impair or impede their ability to protect their interests.

12.     Pursuant to Fed. R. Civ. P. Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

13.     Pursuant to Fed. R. Civ. P. Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## **PARTIES**

14.     Representative Plaintiff, Kimberly Yargeau, is a citizen of Massachusetts who is the rightful owner of 12 Central Turnpike, Sutton, MA 01590 which is the "subject property" referenced herein.

15.     Defendant, Federal Housing Finance Agency (FHFA), is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. S 4511 *et seq*. FHFA is located at 400 7th St SW, Washington, DC 20024.

16.     Defendant, Federal National Mortgage Association (Fannie Mae), is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, and promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing. (See: 12 U.S.C. 1451). Fannie Mae is located at 3900 Wisconsin Ave NW, Washington, DC 20016.

17.     Defendant, Wells Fargo Bank, N.A. (Wells Fargo), is a banking related services company located at 420 Montgomery Street, San Francisco, CA 94104.

18.     At all times referenced herein, the Defendants acted in concert with one another, had knowledge of and were aware of the actions of each other as noted herein.

## GENERAL FACTUAL ALLEGATIONS

**The Conservatorship of FHFA over Fannie Mae**

19.     With the U.S. Congress' establishment of the Housing and Economic Recovery Act of 2008 (HERA), the federal government established FHFA as a federal agency to supervise and regulate Federal Home Loan Mortgage Corporation (Freddie Mac) and Federal National Mortgage Association (Fannie Mae), and any Federal Home Loan Bank. (See: 12 U.S.C. §§ 4502 (20), 4511(b)(2)).

20.     The Director of FHFA is empowered to place Fannie Mae into conservatorship under FHFA and the power of FHFA to operate and control all of Fannie Mae's operations as its conservator.

21.     The Director of FHFA placed Fannie Mae under the conservatorship of FHFA on or about September 7, 2008. (See: Exhibit 1).

22.     In January 2010, the Congressional Budget Office (CBO) concluded that the actions taken by FHFA to place Fannie Mae under conservatorship effectively made Fannie Mae a government entity, based on the federal government's control and ownership of Fannie Mae.[1] (See: Exhibit 2, Id. at pg. 7).

---

[1] See Exhibit 2: Congressional Budget Office Background Paper, 2010, Id. at page 1 "In the judgment of the Congressional Budget Office (CBO), those actions make Fannie Mae and Freddie Mac part of the government and imply that their operations should be reflected in the federal budget". Under the CBO's accounting, "the mortgages owned or guaranteed by Fannie Mae and Freddie Mac were treated as loans and guarantees of the federal government."

23.     In 2013, the CBO concluded, "the federal government is now the effective owner of [Fannie Mae], any gain or loss arising from a change in the way the distressed mortgages are handled by [Fannie Mae] would ultimately accrue to taxpayers."[2] (See: Exhibit 3, Id. at pg. 1).

24.     Since September 2008, FHFA has controlled and continues to control all rights, titles, powers and privileges of the shareholders and board of directors of Fannie Mae.[3] Because FHFA as conservator has succeeded to the rights of all shareholders, only FHFA is allowed to elect the directors of Fannie Mae, not shareholders. (See: Exhibit 4, Id. at pg. 25, 166).

25.     FHFA determines the size of Fannie Mae's Board of Directors and the scope of its authority.[4] Since the inception of the conservatorship, FHFA has elected all of the directors and the Chief Executive Officer of Fannie Mae.[5] FHFA delegated certain authority to the Board of Directors, while retaining certain significant authorities for itself.[6] FHFA also controls amendment to or withdrawal of the delegation of authority at any time.[7]

26.     Fannie Mae's directors serve on behalf of, and exercise their authority as directed by, FHFA.[8] As a result of the conservatorship, Fannie Mae is being managed to serve a public mission, which may negatively impact Fannie Mae's business and profitability.[9] Under FHFA conservatorship, Fannie Mae is not managed to maximize shareholder returns.[10]

---

[2] See Exhibit 3: Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02.
[3] See Exhibit 4: Federal National Mortgage Association, Annual Report, Form 10-K, for the fiscal year ended December 31, 2014, Id. at pages 25, 162, 166.
[4] Exhibit 4, Id. at pg. 162.
[5] Exhibit 4, Id. at pg. 162.
[6] Exhibit 4, Id. at pg. 162.
[7] Exhibit 4, Id. at pg. 25, 162.
[8] See: Exhibit 4, Id. at pages 25, 52, 162.
[9] See: Exhibit 4, Id. at pages 25, 52.
[10] See: Exhibit 4, Id. at pg. 25, 52.

27.     FHFA, as both conservator and regulator, and the United States Treasury, pursuant to a senior preferred stock purchase agreement, prohibit Fannie Mae from paying any dividends to common shareholders.[11]

28.     FHFA's own September 7, 2008 explanation of the conservatorship states that there is "no exact time frame that can be given as to when this conservatorship may end." FHFA's conservatorship of Fannie Mae will end, according to said explanation, when the Director of FHFA issues an order terminating the conservatorship, after the Director determines that FHFA's "plan to restore the Company to a safe and solvent condition has been completed successfully."[12] (See; Exhibit 5, Id. at pg. 2).

29.     As a result of FHFA's conservatorship of Fannie Mae, since September 6, 2008, and continuing for the foreseeable future, FHFA directly controls and operates Fannie Mae with all the powers of the shareholders, directors, and officers of Fannie Mae, owns title to all the assets of Fannie Mae, and has broad powers over all business of Fannie Mae.[13]

30.     Pursuant to the provisions of HERA, FHFA's conservatorship of Fannie Mae can only be terminated if FHFA's director appoints FHFA as receiver of Fannie Mae. (See: 12 U.S.C § 4617(a)(4)(D)). However, FHFA's control over Fannie Mae will not be terminated upon its being appointed as receiver. There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Fannie Mae will terminate.

31.     On or about September 7, 2008, as restated on or about September 26, 2008, Fannie Mae entered into a senior preferred stock purchase agreement, as amended, with the United States Treasury. Pursuant to said agreement, Fannie Mae transferred 1,000,000 shares of preferred stock,

---

[11] See: Exhibit 4, Id. at pg. 52.
[12] See: Exhibit 5, Id. at pg. 2; FHFA, Questions and Answers on Conservatorship, (Sept. 7, 2008), available at http://www.treasury.gov/press-center/pressreleases/Documents/fhfa consrv faq 090708hpl 128.pdf.
[13]  See: Exhibit 4 at pg. 25.

senior in right for both dividends and liquidation to all other preferred or common stock, with an initial liquidation preference of $ 1,000.00 per share; a warrant to purchase 79.9% of the common stock at a nominal price; with restrictions on Fannie Mae's ability to issue new shares, declare dividends, or dispose of assets without the approval of the United States Treasury, to the United States Treasury, in exchange for the commitment of the United States Treasury to extend $100-200 billion to ensure the liquidity of Fannie Mae.[14] (See: Exhibit 6).

32.     The United States Treasury owns 100% of the senior preferred stock of Fannie Mae and holds warrants to purchase 79.9% of the common stock of Fannie Mae.[15] (See: Exhibit 7). Pursuant to said senior preferred stock purchase agreement, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Fannie Mae, which results in every dollar of future profits being paid to the United States Treasury.[16] Similarly, Fannie Mae is not permitted to retain earnings, rebuild a capital position, pay dividends or other distributions to stockholders other than the United States Treasury.[17] Dividends are payable only at the direction of Conservator FHFA with consent of the Treasury.

33.     Pursuant to the senior preferred stock purchase agreement, Fannie Mae is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate unless Fannie Mae is liquidated, Fannie Mae's liabilities are satisfied, or the Treasury has provided the maximum amount of funding available under its commitment to Fannie Mae.[18]

---

[14] See: Exhibit 6; Amended and Restated Senior Preferred Stock Purchase Agreement September 26, 2008.
[15] See: Exhibit 4 Id. at pages 26, 27.
[16] See: Exhibit 4 Id. pages 27, 52
[17] See: Exhibit 4 Id. at pg. 2.
[18] See Exhibit 4 Id. at pages 25, 115.

34.     Notwithstanding termination of the conservatorship by means other than appointment of FHFA as receiver of Fannie Mae, Fannie Mae will remain subject to the control of the United States Treasury pursuant to senior preferred stock purchase, senior preferred stock, and warrant to purchase common stock agreements.[19]

35.     The CBO considers the payments from Fannie Mae to the United States Treasury as "intragovernmental payments, which do not affect net federal outlays."[20]

36.     As Fannie Mae was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, and as the federal government maintains a substantial ownership interest in Fannie Mae, and as Fannie Mae is substantially funded by the federal government, its Board of Directors of Fannie Mae are entirely appointed by FHFA, and because Fannie Mae is under the control of FHFA and/or the United States Treasury, Fannie Mae is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution.  ("The Court holds that the Plaintiffs can prove that the GSE's and FHFA-as-conservator are government actors, and thus, can prove that the Defendants denied Plaintiffs due process by conducting non-judicial foreclosures." Sisti v FHFA et al, US Dist. R.I. No 17-005 (Aug 2, 2018)).

**The Agency Relationship between FHFA and Fannie Mae and Third Party Servicers**.

37.     In its ordinary course of business, Fannie Mae purchases mortgages from originators such as banks. Fannie Mae holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors. (See: Exhibit 8, Id. at pg. 6; FHFA Office of Inspector General Evaluation Report, FHFA' s Oversight of the Servicing Alignment Initiative, February 12, 2014).

---

[19]  See: Exhibit 2 at pg. 3.
[20]  See Exhibit 2, Id. at pg. 3.

38.     For the mortgages that Fannie Mae purchases, Fannie Mae enters into contracts with mortgage servicers, which includes a "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.[21]

39.     The "Servicing Guide" establishes certain requirements which servicers of Fannie Mae mortgages follow when they perform servicing functions and obligations, including specific instructions on mitigating losses after borrowers' default and conducting foreclosures on behalf of Fannie Mae.[22]

40.     After FHFA placed Fannie Mae into conservatorship, FHFA has engaged in continuous supervision of the GSE's oversight of its servicers. (See Exhibit 9, Id. at pg. 20; FHFA Office of Inspector General, FHFA's Supervision of Fannie Mae's Controls over Mortgage Servicing Contractors, March 7, 2012).[23]

**The Foreclosure Policies of FHFA and Fannie Mae are Unconstitutional**

41.     FHFA created the Servicer Alignment Initiative in April 2011 ('SAI"), by which FHFA directs the actions of servicers of Fannie Mae's mortgages. When servicing delinquent mortgage loans, through the SAI, FHFA directed Fannie Mae to update its servicing guidelines, adding new standards and timelines by which servicers were to manage delinquent mortgages.[24]

---

[21] See: Exhibit 8, Id. at pg. 8.
[22] See: Exhibit 8, Id. at pages 8,9.
[23] FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Fannie Mae's] overall business profile, including any trends or associated emerging risks."
[24] See: Exhibit 8, Id. at pages 9-11.

42.     In the SAI, FHFA created a policy that requires servicers of Fannie Mae owned mortgages to follow specific state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale.[25]

43.     In the SAI, FHFA has directed Fannie Mae's servicers to use non-judicial foreclosure procedures when foreclosing on residential properties in Rhode Island, including the Properties of the Representative Plaintiffs and others so similarly situated.

44.     FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment because it requires servicers of Fannie Mae loans to deprive homeowners, like the Representative Plaintiffs and others so similarly situated, of their primary residences through the use of non-judicial foreclosure proceedings, which do not provide for a hearing prior to the deprivation of a homeowner's property interest.

45.     As such, Wells Fargo, Fannie Mae, and FHFA jointly violated the Fifth Amendment procedural due process rights of the Representative Plaintiffs and others so similarly situated, by conducting non-judicial foreclosures and sales pursuant to G. L. c. 183, § 21 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

## ALLEGATIONS OF THE REPRESENTATIVE PLAINTIFF

46.     The Representative Plaintiff, Kimberly Yargeau, repeats and re-alleges every allegation above as if set forth herein in full.

47.     The Representative Plaintiff brings this action on behalf of herself and all others so similarly situated.

48.     On November 16, 2004, the property located at 12 Central Turnpike, Sutton, MA 01590 was conveyed to Representative Plaintiff Kimberly Yargeau. The Deed granting said property was

---

[25] See: Exhibit 8, Id. at pg. 10.

recorded in the Worcester District Registry of Deeds in Book 35094, at Page 234 on November 17, 2004. 12 Central Turnpike, Sutton, MA 01590 is the subject property as referenced herein.

49.     On May 25, 2007, said Representative Plaintiff executed a promissory note and mortgage deed in the sum of Two Hundred Fourteen Thousand and---00/100 Dollars ($214,00.00) in favor of Drew mortgage Associates, Inc. as lender and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee. (Yargeau Mortgage/Note). The Yargeau Mortgage was recorded in the Worcester District Registry of Deeds in Book 41240, at page 381 on May 31, 2007. Subsequently, the Yargeau Note was conveyed to Fannie Mae.

50.      On October 14, 2009, MERS assigned the Yargeau Mortgage to Wells Fargo Bank, N.A. Said assignment was recorded in the Worcester District Registry of Deeds in Book 44977 at Page 98 on October 19, 2009. Subsequently Wells Fargo became the servicer of the Yargeau Mortgage, on behalf of Note Holder, Fannie Mae.

51.     On November 21, 2012, MERS assigned the Yargeau Mortgage again to Wells Fargo Bank, N.A. Said assignment was recorded in the Worcester District Registry of Deeds in Book 50019 at Page 24 on November 27, 2012.

52.     On May 17, 2018, Wells Fargo filed an Order of Notice in Massachusetts Land Court seeking determination of Military Service Member status of Plaintiff. Said Order was recorded in the Worcester District Registry of Deeds in Book 58973 at Page 357 on June 20, 2018.

53.     On May 29, 2018, Wells Fargo executed an affidavit purportedly in compliance with G.L. c. 244 § 35B and G.L. c. 244 § 35C. Said Affidavit was recorded In the Worcester District Registry of Deeds in Book 58905 at Page 335 on June 6, 2018.

54.     On or about August 25, 2018, Wells Fargo, acting as third party loan servicer on behalf of Fannie Mae, caused to be sent to Plaintiff a Notice of Intent to Foreclose and Mortgagee's Foreclosure Sale, stating a sale date of September 27, 2018.

55.     On September 27, 2018, Wells Fargo, acting as third party loan servicer on behalf of mortgagee Fannie Mae, caused a mortgagee's foreclosure sale to be conducted wherein the Yargeau Mortgage was foreclosed and the subject property was sold at mortgagee's foreclosure sale to Wells Fargo as the highest bidder for $221,280.49. Wells Fargo subsequently assigned their bid to Fannie Mae. A foreclosure deed conveying the property to Fannie Mae was recorded in the Worcester District Registry of Deeds in Book 59714 at Page 167 on November 20, 2018.

56.     Representative Plaintiff Kimberly Yargeau alleges Defendants Wells Fargo, Fannie Mae, and FHFA jointly violated her Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale, without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

57.     The Defendants have deprived said Representative Plaintiff, and others so similarly situated, of property without Due Process prior to exercising the power of sale.

58.     Therefore, the foreclosure of the Yargeau Mortgage and the mortgages of others so similarly situated, and mortgagee's foreclosure sales of the subject property and the properties of others so similarly situated, are wrongful, void, and without force and effect.

## CLASS ALLEGATIONS

59.     The Representative Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

60.     The Representative Plaintiff brings this Action on behalf of herself and all others so similarly situated.

61.     The Representative Plaintiff sues on behalf of herself and all homeowners or former homeowners wherein since September 7, 2008, the Defendants, and all other servicers of Fannie Mae mortgages, conducted non-judicial foreclosures and sales pursuant to pursuant to G. L. c. 183, § 21 without first providing the Representative Plaintiff and others adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages, in violation of the rights afforded them pursuant to the Due Process Clause of the Fifth Amendment of the Constitution of the United States of America.

62.     The gravity of harm to the Representative Plaintiff and members of the class resulting from the Defendants wrongdoing outweighs any conceivable reasons, justifications and/or motives of said Defendants for engaging in such unfair acts and practices.

63.     Defendants conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

64.     The Representative Plaintiff and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

65.     The Representative Plaintiff and members of the class have suffered general damages such as loss of property interests, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme mental and emotional distress.

66.     The Representative Plaintiff and members of the class seek actual, exemplary, punitive, and monetary damages.

67.     The Representative Plaintiff claims on behalf of herself and all others so similarly situated that the Defendants deprivation of the Representative Plaintiff's and others so similarly situated

properties, without Due Process, in violation of the rights afforded them under the Fifth Amendment of the United States Constitution, are the direct and proximate causes of the harms as alleged herein.

68.     Excluded from the class are governmental entities, the Defendants, their affiliates and subsidiaries, the Defendants current employees and current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

69.     The Representative Plaintiff does not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendants. The Representative Plaintiff believes that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendants books and records.  Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

70.     The Representative Plaintiff and all members of the class have been subject to and affected by the same conduct.

71.     The questions of law and fact are common to the class and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

72.     The claims of the Representative Plaintiff are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Representative Plaintiff and the other members of the class were subject to the same conduct. (i.e. Typicality).

73.     The Representative Plaintiff will fairly and adequately represent the interests of the class as a whole.  The Representative Plaintiff is committed to the vigorous prosecution of the class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

74.     A Class Action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

75.     The Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

76.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

77.     It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

78.     The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

79.     It is desirable to concentrate the litigation of the claims in this particular forum and there are little to no difficulties likely to be encountered in the management of a classification.

## COUNT I
## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

80.     The Representative Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

81.     The Representative Plaintiff brings this Action on behalf of herself and all others so similarly situated.

82.     Pursuant to the foreclosure policy in the SAI, Wells Fargo, Fannie Mae, and FHFA are acting jointly to deprive the Representative Plaintiff and others of their ownership rights in

properties by conducting foreclosure sales pursuant to pursuant to G. L. c. 183, § 21 which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before foreclosure and sale.

83.    When used by federal government actors, such as Fannie Mae and FHFA, the procedures of pursuant to G. L. c. 183, § 21 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of his/her property. Specifically, G. L. c. 183, § 21 does not provide for adequate notice, an opportunity to be heard before the deprivation of property, or opportunity to recover appropriate damages for improper deprivation of property.

84.    Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Fannie Mae and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to the Representative Plaintiff and others, than is provided by Massachusetts General Laws before depriving the Representative Plaintiff and others of their properties.

85.    The Representative Plaintiff and others were denied opportunity for an evidentiary hearing in which they could have had an opportunity to: confront and cross-examine persons who supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of Defendants prior to the termination of interest in their Property; be represented by counsel during a hearing prior to the termination of interest in their Property; and to have a neutral informal hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of their interest in Property.

86.    Had the Representative Plaintiff and others had opportunity for a hearing, they could have presented evidence to challenge their foreclosures by demonstrating that Fannie Mae, or their servicers, were not the mortgagee on the date of the foreclosure sale at issue, that Fannie Mae,

and/or their servicers, failed to comply with condition precedents to foreclosure including default and acceleration notice requirements contained in the mortgages, failed to provide the required foreclosure notices pursuant to Massachusetts foreclosure statutes, and that Fannie Mae, and/or their servicers, failed to act in good faith.

87.     The Representative Plaintiff and others have significant property interests at stake. Foreclosures and sales of the mortgages and properties (respectively) of the Representative Plaintiff and others, permanently deprived the Representative Plaintiff and others of their ownership, possession, and use of said properties, which are used as primary residences; clouded titles to the properties; impaired ability to sell, rent, or otherwise alienate properties; tainted credit ratings; reduced chances of the Representative Plaintiff and others in obtaining future loans or mortgages; denied the Representative Plaintiff and others of opportunity to loss mitigation opportunities and strategies to deal with default and delinquency resulting in resolution of those situations; and jeopardized the Representative Plaintiff and others security in dwelling places.

88.     There is significant risk of erroneous deprivation of the Representative Plaintiff and others interests through procedures used by Fannie Mae, and FHFA pursuant to pursuant to G. L. c. 183, § 21.

89.     To prevent erroneous deprivation of property, the Due Process Clause of the Fifth Amendment to the United States Constitution requires agencies and/or instrumentalities of the federal government, such as Fannie Mae and FHFA, to provide the Representative Plaintiff and others an opportunity to be heard at a meaningful time on, inter alia, any challenge to the true ownership of the Note; any challenge to Fannie Mae' s and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Fannie Mae' s and/or FHFA' s determination of default under the Note and Fannie Mae's and/or FHFA's calculation of deficiency; any challenge to Fannie Mae's and/or FHFA's determination that the Representative Plaintiff and others are not

eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Fannie Mae and/or FHFA acted in good faith; and any challenge to Fannie Mae' s and/or FHFA' s compliance with applicable notice procedures.

90.     The government's financial interest in obtaining ownership, possession, and use of the properties of the Representative Plaintiff and others is minimal.

91.     There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

92.     FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment in that it requires servicers of Fannie Mae loans to deprive homeowners like the Representative Plaintiff and others so similarly situated, of their primary residences through the use of non-judicial foreclosure proceedings, which do not provide for a hearing prior to the deprivation of the homeowners' property interest.

93.     Wells Fargo, Fannie Mae, and FHFA jointly violated the Fifth Amendment procedural due process rights of the Representative Plaintiff and others so similarly situated, by conducting non-judicial foreclosures and sales pursuant to pursuant to G. L. c. 183, § 21 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

94.     As a direct and proximate result of Wells Fargo's, Fannie Mae's, and FHFA's violation of the Representative Plaintiff and others so similarly situated due process rights, the Representative Plaintiff and others so similarly situated have suffered damages including harm to their credit; costs and expenses of foreclosures and sales added to their accounts; a losses of equity in properties; expenses due to postage, mailing, and long distance telephone calls; an impairment of

their ability to sell, rent, or otherwise alienate their properties; and having their security in dwelling places jeopardized.

95.     The Representative Plaintiff claims on behalf of herself and all others so similarly situated that the Defendants deprivation of the Representative Plaintiff and others so similarly situated properties, without Due Process, in violation of the rights afforded them under the Fifth Amendment of the United States Constitution, are the direct and proximate causes of the harms as alleged herein.

96.     The Representative Plaintiff and others are entitled to a declaratory judgment determining that the acceleration of all sums due under the notes, the foreclosures, and mortgagee's foreclosure sales of the subject property, and the properties of those so similarly situated, are in violation of the Fifth Amendment procedural due process rights of the Representative Plaintiff and others so similarly situated and are therefore void.

97.     The Representative Plaintiff and others are entitled to an injunction preventing the transfer of the right, title, and interest in their properties.

98.     The Representative Plaintiff and others are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

99.     The Representative Plaintiff and others are entitled to be returned to their status and circumstances prior to the wrongful foreclosure and sale, including, but not limited to, the rescission of foreclosures, voiding of foreclosure deeds, and the quieting of titles of the Representative Plaintiff and others so similarly situated.

100.    The Representative Plaintiff and others are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by law.

Dated: December 18, 2018

Respectfully Submitted,
The Representative Plaintiff,
By Her Attorney,
Todd S. Dion Esq.,

_____

Todd S. Dion Esq. (659109)
15 Cottage Avenue, Ste 202
Quincy, MA 02169
401-965-4131 Cell
401-353-1230 Phone
401-353-1231 Fax
toddsdion@msn.com

**<u>VERIFICATION</u>**

I, Kimberly Yargeau, Plaintiff in the above-captioned action, hereby depose and state that I have read and subscribed to the foregoing, and the facts set forth therein are based on my own personal knowledge and are true and correct.

Signed under the penalties of perjury on December _____, 2018.


Respectfully submitted,
Kimberly Yargeau,


_____