## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY A. YARGEAU, RONALD E. ASHLEY III, On behalf of themselves and all others so similarly situated, ) ) ) ) | |
| *Plaintiff,* ) | C.A. NO.  4:18-CV-12652 |
| ) | SECOND AMENDED |
| ) | CLASS ACTION COMPLAINT |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| WELLS FARGO BANK, FEDERAL NATIONAL MORTGAGE ASSOCIATION, ) ) | |
| ) | |
| *Defendants.* ) | |

## <u>INTRODUCTION</u>

1.      The Representative Plaintiffs Kimberly A. Yargeau and Ronald E. Ashley III, on behalf of

themselves and all others so similarly situated, bring this action as described in the paragraphs set

forth herein. This class action complaint alleges that Defendants, Wells Fargo Bank and Federal

National Mortgage Association, breached of the terms of those certain mortgages noted herein,

given by Plaintiffs as secured by their real properties and in the case of the representative Plaintiffs,

secured by real property located at 12 Central Turnpike, Sutton, MA 01590, 484 Taunton Avenue,

Seekonk, MA 02771 as well as the real properties of those Plaintiffs in the class.  The Defendants

breached the mortgage contracts in violation of Mass Gen Laws Ch. 244 § 14 as well as violated

Mass. Gen. Laws Ch. 244 §35A by sending purported default notices in accordance with the

mortgage contract and right to cure notices pursuant to Mass. Gen. Laws Ch. 244 §35A that

contained materially misleading statements.  Defendants' breaches resulted in void default notices

pursuant to the terms to the mortgages, void right to cure notices in accordance with Mass. Gen.

Laws Ch. 244 §35A, void foreclosure notices, void foreclosure auctions pursuant to said mortgages, void foreclosure sales and void foreclosure deeds.

2.      The Representative Plaintiffs, on behalf of themselves and all others so similarly situated, pray that this Honorable Court find that the Defendants breached the terms of the mortgages and further find said default notices are invalid and void.   Further said Plaintiffs pray that this Honorable Court find that the Defendants violated Mass. Gen. Laws Ch. 244 §35A and further find that the right to cure notices sent pursuant to said statute are null and void as well.  In addition, said Plaintiffs ask that this Court find that any foreclosure sales conducted by the Defendants and foreclosure deeds granted subsequent to the invalid default notices be declared null and void regardless of whether or not said invalid foreclosure deeds were recorded.    Representative Plaintiffs ask that this Honorable Court declare that any such default notices sent to the Class Plaintiffs as described in this complaint be null and void, declare that any right to cure notices pursuant to Mass. Gen. Laws Ch. 244 §35A as described in this complaint be null and void, declare that any notice of mortgagee's foreclosure sale made to the Class Plaintiffs subsequent to such void default notices and void right to cure notices be null and void, enjoin the Defendants from conducting any foreclosure auction or conveyance of the subject properties and declare any foreclosure deed for said Class Plaintiffs null and void.  Class Plaintiffs also seek declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief provided by law for Defendant's wrongful acts.

## JURISDICTION AND VENUE

3.      This Honorable Court has subject matter and original jurisdiction over this action and all Defendants pursuant to 28 U.S.C. § 1332, as this case arises between parties of diversity citizenship and the amount in controversy exceeds the sum or value of $75,000.00.

4.      Venue is proper in this Honorable Court in that the events or omissions giving rise to this claim have occurred, and the real properties that are subject of the action are situated within the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391.

5.      Venue is proper in this Honorable Court in that this Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

6.      Pursuant to Fed. R. Civ. P. Rule 23(a)(1), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable.

7.      Pursuant to Fed. R. Civ. P. Rule 23(b)(1), there are questions of law and fact common to the class.

8.      Pursuant to Fed. R. Civ. P. Rule 23(a)(3), the claims or defenses of the Representative Plaintiff are typical of the claims or defenses of the class.

9.      Pursuant to Fed. R. Civ. P. Rule 23(a)(4), the Representative Plaintiff will fairly and adequately protect the interests of the class.

10.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A)&(B), prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications and may substantially impair or impede their ability to protect their interests.

11.     Pursuant to Fed. R. Civ. P. Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

12.     Pursuant to Fed. R. Civ. P. Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## PARTIES

13.     Representative Plaintiffs Kimberly A. Yargeau and Ronald E. Ashley III are citizens of Massachusetts and the owners of the subject properties respectively located at 12 Juniper Street, Billerica, MA 01682 and 484 Taunton Avenue, Seekonk, MA 02771.

14.     Defendant, Wells Fargo Bank, NA, is a residential mortgage servicing company, located at 101 North Phillips Avenue, Sioux Falls, SD 57104..

15.     Defendant, Federal National Mortgage Association (Fannie Mae), is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, and promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing. (See: 12 U.S.C. 1451). Fannie Mae is located at 3900 Wisconsin Ave NW, Washington, DC 20016.

16.     At all times herein mentioned, Defendants, Wells Fargo and Fannie Mae both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

17.     Defendants, Wells Fargo and Fannie Mae had actual and/or constructive knowledge of the acts of the other as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

## ALLEGATIONS OF THE REPRESENTATIVE PLAINTIFF YARGEAU

18.    Representative Plaintiff, Kimberly A. Yargeau, resides at and claims to be the owner of real property located 12 Central Turnpike, Sutton, MA 01590, which is the subject property as referenced herein.

19.    Representative Plaintiff Yargeau brings this action on behalf of herself and all others so similarly situated.

20.    On November 16, 2004, the subject property was granted to Representative Plaintiff Yargeau. The Deed evidencing transfer of the ownership of the subject property was recorded in the Worcester Registry of Deeds in Book 35094 at Page 234 on November 17, 2004.

21.    On May 25, 2007, Representative Plaintiff Yargeau was granted a Mortgage loan, secured by the subject property, in the amount of $214,000.00, which was recorded in the Worcester Registry of Deeds in Book 41240 at Page 381 on May 31, 2007. (the Yargeau Mortgage) The Mortgage identified Drew Mortgage Associates as the Lender and Mortgage Electronic Registration Systems ("MERS") as mortgagee.

22.    The Yargeau Mortgage states at paragraph 22 as follows;

"22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

23.    Paragraph 22 of the Yargeau Mortgage required that prior to acceleration and foreclosure the Defendants were required to send Representative Plaintiff Yargeau a Default Notice which informed Representative Plaintiff Yargeau that she had a "right to reinstate after acceleration". The "right to reinstate after acceleration" contained in the Yargeau Mortgage is described in Paragraph 19 of the Mortgage as follows:

"19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*. However this right to reinstate shall not apply in the case of acceleration under Section 18."

(emphasis added)

6

24.     On October 19, 2009, MERS assigned the Yargeau Mortgage to Defendant, Wells Fargo Bank, N.A. Said assignment was recorded in the Worcester Registry of Deeds in Book 44977 at Page 98 on October 19, 2009.

25.     On November 21, 2012, MERS again assigned the Yargeau Mortgage to Defendant Wells Fargo Bank, N.A.  Said assignment was recorded in the Worcester Registry of Deeds in Book 50019 at Page 24 on November 27, 2012.

26.     Subsequent to the granting of the Yargeau Mortgage, Defendant Fannie Mae became the holder of the Note that was secured by the Yargeau Mortgage.

27.     On or about October 30, 2015 Defendant, Wells Fargo, allegedly sent to Representative Plaintiff Yargeau a form default/ right to cure letter which stated "after 4/2/2016" (the right to cure date/ acceleration date), "you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place . . . to avoid foreclosure".  This statement presents an affirmative misstatement in the default/ right to cure letter because Paragraph 19 of the mortgage only allows reinstatement of the mortgage after acceleration "*prior to the earliest of*: (a) *five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Defendant's right to reinstate; or (c) entry of judgment enforcing this Security Instrument".

28.     Since there is no Applicable Law specifying the termination of the right to reinstate and there is no entry of judgment enforcing the mortgage, the Representative Plaintiff Yargeau's right to reinstate and avoid foreclosure expired five days before the foreclosure sale in accordance with Paragraph 19 of the mortgage.  Therefore, the default/ right to cure letter's assertion that the Representative Plaintiff Yargeau could pay the "total past due amount before a foreclosure sale

take place…to avoid foreclosure" is in direct contradiction with paragraph 19 of the mortgage and is a misleading and incorrect statement.

29.    In addition, the failure of the default/ right to cure letter to inform Representative Plaintiff Yargeau that the right to reinstate expires 5 days before the foreclosure sale in accordance with paragraph 19 of the Yargeau Mortgage, is a violation of Mass. Gen. Laws ch. 244 §35A(c)(2) which required the right to cure letter to inform Representative Plaintiff Yargeau of "the date by which the mortgagor shall cure the default to avoid . . . a *foreclosure or other action to seize the home*". (emphasis added).

30.    In taking account the record and discovery to date, Representative Plaintiffs allege in accordance with Paragraph 22 of their Complaint that the purported Default/ Right to Cure Letters fail to fully and "properly" describe the Plaintiffs' "right to reinstate after acceleration" as required by and detailed in Paragraph 19 of the Mortgage.  Therefore, the Defendant's failure to include such information is a breach of contract and a violation of the Statutory Power of Sale pursuant to M.G.L. ch. 244 §21 for failing to provide a "proper" default notice in accordance with Paragraph 22 of the Mortgage and a violation of Mass. Gen. Laws Ch. 244 §35A(c)(2).

31.    On September 27, 2018, the Defendants wrongfully foreclosed the Yargeau mortgage and conducted a void mortgagee's foreclosure sale of the subject property.

32.    On November 20, 2018 Defendants recorded a Foreclosure Deed dated October 9, 2018 from Defendants, Wells Fargo Bank, N.A. to Fannie Mae.  The Foreclosure Deed was recorded in the Worcester Registry of Deeds Book 59714 at page 167.

33.    Representative Plaintiffs allege that the notice sent purporting to state compliance with paragraph 22 of the Yargeau Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Representative Plaintiffs

could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure", and further failed to state with specificity the conditions Representative Plaintiffs are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Yargeau Mortgage.

34.     Representative Plaintiffs further allege that the default/right to cure letter failed to inform Representative Plaintiffs that the right to reinstate after acceleration is to be done "prior to . . . five days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to notify the Representative Plaintiffs of "the date by which the mortgagor shall cure the default to avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

35.     As such, the Defendants failed to provide the Representative Plaintiffs proper Notice of Default/ Right to Cure in violation of M.G.L. c. 244 §35A(c)(2) and in breach of the Mortgage contract and are in violation of M. G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any acceleration, foreclosure, and sale void.

## ALLEGATIONS OF THE REPRESENTATIVE PLAINTIFF ASHLEY

36.     Representative Plaintiff, Ronald E. Ashley III, resides at and claims to be the owner of real property located 484 Taunton Avenue, Seekonk, MA 02771, which is the subject property as referenced herein.

37.     Representative Plaintiff Ashley brings this action on behalf of herself and all others so similarly situated.

38.     On August 4, 2010, the subject property was granted to Representative Plaintiff Ashley. The Deed evidencing transfer of the ownership of the subject property was recorded in the North Bristol Registry of Deeds in Book 18889 at Page 344 on August 5, 2010.

39.   On August 4, 2010, Representative Plaintiff Ashley was granted a Mortgage loan, secured by the subject property, in the amount of $191,020.00, which was recorded in the North Bristol Registry of Deeds in Book 18890 at Page 1 on August 5, 2010. (the Ashley Mortgage) The Mortgage identified M&T Bank as the Lender and Mortgage Electronic Registration Systems ("MERS") as mortgagee.

40.   The Ashley Mortgage states at paragraph 22 as follows;

> "22.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke THE STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

41.   Paragraph 22 of the Ashley Mortgage required that prior to acceleration and foreclosure the Defendants were required to send Representative Plaintiff Ashley a Default Notice which informed Representative Plaintiff Ashley that she had a "right to reinstate after acceleration". The

"right to reinstate after acceleration" contained in the Ashley Mortgage is described in Paragraph

19 of the Mortgage as follows:

> "19. Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*.  However this right to reinstate shall not apply in the case of acceleration under Section 18."

> (emphasis added)

42.    On June 6, 2014, MERS assigned the Ashley Mortgage to Defendant, Wells Fargo Bank,

N.A. Said assignment was recorded in the North Bristol Registry of Deeds in Book 21722 at Page

7 on June 12, 2010.

43.    On or about June 8, 2017 Defendant, Wells Fargo, allegedly sent to Representative Plaintiff

Yargeau a form default/ right to cure letter which stated "after (the right to cure date/ acceleration

date), "you can still avoid foreclosure by paying the total past due amount before a foreclosure sale

takes place . . . to avoid foreclosure".  This statement presents an affirmative misstatement in the

default/ right to cure letter because Paragraph 19 of the mortgage only allows reinstatement of the

mortgage after acceleration "*prior to the earliest of*: (a) *five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Defendant's right to reinstate; or (c) entry of judgment enforcing this Security Instrument".

44.     Since there is no Applicable Law specifying the termination of the right to reinstate and there is no entry of judgment enforcing the mortgage, the Representative Plaintiff Ashley's right to reinstate and avoid foreclosure expired five days before the foreclosure sale in accordance with Paragraph 19 of the mortgage.   Therefore, the default/ right to cure letter's assertion that the Representative Plaintiff Ashley could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" is in direct contradiction with paragraph 19 of the mortgage and is a misleading and incorrect statement.

45.     In addition, the failure of the default/ right to cure letter to inform Representative Plaintiff Ashley that the right to reinstate expires 5 days before the foreclosure sale in accordance with paragraph 19 of the Ashley Mortgage, is a violation of Mass. Gen. Laws ch. 244 §35A(c)(2) which required the right to cure letter to inform Representative Plaintiff Ashley of "the date by which the mortgagor shall cure the default to avoid . . . a *foreclosure or other action to seize the home*". (emphasis added).

46.     In taking account the record and discovery to date, Representative Plaintiffs allege in accordance with Paragraph 22 of their Complaint that the purported Default/ Right to Cure Letters fail to fully and "properly" describe the Plaintiffs' "right to reinstate after acceleration" as required by and detailed in Paragraph 19 of the Mortgage.   Therefore, the Defendant's failure to include such information is a breach of contract and a violation of the Statutory Power of Sale pursuant to

M.G.L. ch. 244 §21 for failing to provide a "proper" default notice in accordance with Paragraph 22 of the Mortgage and a violation of Mass. Gen. Laws Ch. 244 §35A(c)(2).

47.     On or about January 17, 2019, Wells Fargo caused to be sent to Plaintiff a Notice of Mortgagee Foreclosure Sale stating a sale date of February 19, 2019.

48.     On February 19, 2019, the Defendants wrongfully foreclosed the Ashley mortgage and conducted a void mortgagee's foreclosure sale of the subject property.

49.     Representative Plaintiffs allege that the notice sent purporting to state compliance with paragraph 22 of the Ashley Mortgage failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Representative Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure", and further failed to state with specificity the conditions Representative Plaintiffs are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Ashley Mortgage.

50.     Representative Plaintiffs further allege that the default/right to cure letter failed to inform Representative Plaintiffs that the right to reinstate after acceleration is to be done "prior to . . . five days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to notify the Representative Plaintiffs of "the date by which the mortgagor shall cure the default to avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

51.     M.G.L. ch 244 §35A(d) also provides that "The Mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended."

52.     Defendants failure to notify the Plaintiffs of the right to reinstate after acceleration prior to five days before the sale is also a violation of the notice provision provided in M.G.L. ch 244 §35A(d).

53.     As such, the Defendants failed to provide the Representative Plaintiffs proper Notice of Default/ Right to Cure in violation of M.G.L. c. 244 §35A(c)(2). M.G.L. c. 244 §35A(d) and in breach of the Mortgage contract and are in violation of M. G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any acceleration, foreclosure, and sale void.

## CLASS ALLEGATIONS

54.     The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

55.     The Representative Plaintiffs bring this Action on behalf of themselves and all others so similarly situated.

56.     The Representative Plaintiffs sue on behalf of themselves and all homeowners or former homeowners who were sent default/ right to cure letters which state or imply that Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" which is in direct contradiction with paragraph 19 of the mortgage and is a misleading and incorrect statement.

57.     Representative Plaintiffs further allege that the default/right to cure letter failed to inform Representative Plaintiffs that the right to reinstate after acceleration is to be done "prior to . . . five days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to notify the Representative Plaintiffs of "the date by which the mortgagor shall cure the default to avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

58.     M.G.L. ch 244 §35A(d) also provides that "The Mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended."

59.     Defendants failure to notify the Class Plaintiffs of the right to reinstate after acceleration prior to five days before the sale is also a violation of the notice provision provided in M.G.L. ch 244 §35A(d).

60.     The Representative Plaintiffs, on behalf of themselves and all others so similarly situated, pray that this Honorable Court find that the Defendants breached the terms of the mortgages, violated M.G.L c. 183 §14 and further find said default notices are invalid and void.

61.     The Representative Plaintiffs, on behalf of themselves and all others so similarly situated, pray that this Honorable Court find that the Defendants violated Mass. Gen. Laws Ch. 244 §35A and further find said right to cure notices are invalid and void.

62.     Representative Plaintiffs ask that this Court find that any foreclosure sales conducted by the Defendants and foreclosure deeds granted subsequent to the invalid default/ right to cure notices be declared null and void regardless of whether or not said invalid foreclosure deeds were recorded.

63.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, ask that this Honorable Court declare that any such default/ right to cure notices sent to the Class Plaintiffs as described in this complaint be null and void, declare that any notice of mortgagee's foreclosure sale made on said properties of the Class Plaintiffs subsequent to such void default notices be null and void, declare that any foreclosure auction conducted subsequent to such void default notices be null and void, declare that any foreclosure deed granted subsequent to such void default notices be null and void, and enjoin the Defendants from conducting any foreclosure auction or conveyance of the subject properties.

64.     Class Plaintiffs seek declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief provided by law for Defendants' wrongful acts.

65.     The Representative Plaintiffs and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

66.     The Representative Plaintiffs and members of the class have suffered general damages such as loss of property interests, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme mental and emotional distress.

67.     The Representative Plaintiffs and members of the class seek actual, exemplary, punitive, and monetary damages.

## COUNT I
## DECLARATORY JUDGMENT

68.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, repeat and reincorporate by reference all paragraphs above as if fully articulated herein.

69.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

70.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, allege that the notices sent purporting to state compliance with paragraph 22 of the Mortgages and Mass. Gen. Laws Ch. 244 §35A failed to contain the required information as described in said paragraphs of the mortgages and Mass. Gen. Laws Ch. 244 §35A, contained misleading statements that claimed that the Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure",   and further failed to state with specificity the conditions Class

Plaintiffs are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgages.

71.     As such, the Defendants failed to provide the Class Plaintiffs compliant Notices of Default/ Right to Cure in accordance with Mass. Gen. Laws Ch. 244 §35A in breach of their Mortgage contracts and are in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any default or right to cure notice with the above described verbiage, as well as any acceleration, any foreclosure notice, any foreclosure auction, and any foreclosure deed made subsequent to said void default/ right to cure notices void.

72.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, respectfully ask that this Honorable Court declare that any said default letter/ right to cure notices containing misleading statements that claim or imply that the Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" are null and void.

73.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, ask that this Honorable Court declare that any such default/ right to cure notices sent to the Class Plaintiffs as described in this complaint be null and void, declare that any notice of mortgagee's foreclosure sale made on said properties of the Class Plaintiffs subsequent to such void default notices be null and void, declare that any foreclosure auction conducted subsequent to such void default notices be null and void, declare that any foreclosure deed granted subsequent to such void default notices be null and void, and enjoin the Defendant from conducting any foreclosure auction or conveyance of the subject properties.

74.     The Class Plaintiffs are entitled to a declaratory judgment determining that the accelerations of all sums due under the notes, the attempted foreclosures, and the attempted mortgagee's foreclosure sales of the subject property are all void.

75.     The Class Plaintiffs are entitled to an injunction preventing the transfer of the right, title, and interest in their property.

76.     The Class Plaintiffs are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

77.     The Class Plaintiffs are entitled to be returned to their status and circumstances prior to the wrongful foreclosures and sales.

78.     The Class Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## MORTGAGE POWER OF SALE

79.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, repeat and reincorporate by reference all paragraphs above as if fully articulated herein.

80.     Massachusetts permits non-judicial foreclosure under the statutory power of sale contained at G. L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to the power of sale are strictly complied with. The statute states:

> Section 21. The following "power" shall be known as the "Statutory power of Sale", and may be incorporated in any mortgage by reference:
> (POWER)
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, **first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale**, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever

bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

(Emphasis added).

81.  As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" G.L. c. 183, § 21.

82.  If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void.").

83.  The mortgages given by Class Plaintiffs, secured by the subject properties state at 22 as follows:

22.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke THE STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

84.    Paragraph 22 of the Mortgages require that prior to acceleration and foreclosure the Defendant is required to send the Borrowers a Default Notice which informs the Borrowers that they have a "right to reinstate after acceleration".   The "right to reinstate after acceleration" contained in the Mortgage are described in Paragraph 19 of the Mortgages as follows;

> 19. Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*.  However this right to reinstate shall not apply in the case of acceleration under Section 18."

> (emphasis added)

85.    Representative Plaintiffs, on behalf of themselves and all others so similarly situated, allege that the notices sent purporting to state compliance with paragraph 22 of the Mortgages failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure",  and further failed to state with specificity the conditions Class

Plaintiffs are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgages.

86.     As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

87.     No proper Notices of Default was sent to Class Plaintiffs in accordance with the terms of the mortgage.

88.     As a result, no acceleration letter could be sent to Class Plaintiffs, nor could the mortgagee exercise the statutory power of sale on said mortgages in the Class.

89.     Pursuant to the terms of the Mortgages, compliance with the obligations of the Lender as set forth in paragraphs 19 & 22 of the Mortgages are condition precedents to the accelerations and the exercise of the statutory power of sale.

90.     Class Plaintiffs thus never received an acceleration notice or Notice of Default pursuant to the terms of the Mortgages.

91.     Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Mortgages and sell the subject properties at mortgagee's foreclosure sale.  These actions constituted a breach of contract, resulting in damages to the Class Plaintiffs.

92.     As a result of the above noted improper and invalid exercises of the statutory power of sale and purported foreclosure sales, Class Plaintiffs mortgage loan account were charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

93.     The Class Plaintiffs have incurred damages in hiring attorneys, in regard to the improper actions of Defendants in sending Notices of Foreclosure Sale and conducting sales without first complying with the terms of the mortgages in violation of G. L. c. 183, § 21.

94.     Class Plaintiffs have also incurred emotional injuries and damages due to the improper foreclosure of their home without Defendants first complying with the terms of the mortgages.

95.     The Class Plaintiffs have incurred legal fees for the prosecution of this action as a result of Defendants' violation of G. L. c. 183, § 21 due to the breaches of contract by Defendants as noted herein.

96.     Class Plaintiffs have suffered harm and are threatened with additional harm from Defendants' breach, including but not limited to losses of their property interest, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

97.     The Defendants' breach of contract and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Class Plaintiffs' failure to make their mortgage payments.

98.     Therefore, Plaintiffs would not have suffered the harms as noted herein were it not for the Defendants' breach of the mortgage contract as noted herein.

99.     The Defendants' failure to comply with the terms of the mortgage is in violation of G. L. c. 183, § 21. The foreclosures are therefore void. U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.)

("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

100.    The Class Plaintiffs are entitled to a declaratory judgment determining that the accelerations of all sums due under the notes, the attempted foreclosures, and the attempted mortgagee's foreclosure sales of the subject property are all void.

101.    The Class Plaintiffs are entitled to an injunction preventing the transfer of the right, title, and interest in their property.

102.    The Class Plaintiffs are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

103.    The Class Plaintiffs are entitled to be returned to their status and circumstances prior to the wrongful foreclosures and sales.

104.    The Class Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT III
## BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE

105.    Representative Plaintiffs, on behalf of themselves and all others so similarly situated, repeat and re-allege every allegation above as if set forth herein in full.

106.    As described above, the mortgage contract entered into by Representative Plaintiffs constitutes a valid offer.

107.    Upon Class Plaintiffs executing the mortgage contracts and giving it to their Lender, the Lender accepted that offer.

108.    Alternatively, Class Plaintiffs execution of the mortgage contracts thereby giving a security interest in their properties to their Lender constitutes offers.  Acceptance of those offers occurred when Defendants accepted payments made by Class Plaintiffs pursuant to the mortgage contracts.

109.    The mortgage contracts were supported by consideration.  Class Plaintiffs' payments to Defendants constitutes consideration.

110.    Class Plaintiffs and Defendants thereby formed valid contracts and Class Plaintiffs were, are, and remain ready willing and able to perform under said contracts.

111.    Defendants breached the mortgage contract of Class Plaintiffs by failing to keep its obligations pursuant to the terms as agreed to found at paragraphs 19 & 22 of the Mortgages which state in pertinent part;

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

19. Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*.  However this right to reinstate shall not apply in the case of acceleration under Section 18."

> (emphasis added)

112.    In Massachusetts, a contract containing an obligation of the Lender is construed as a condition precedent, which requires strict compliance.

113.    In Massachusetts, a mortgagee agreeing to abide certain obligations pursuant to the mortgage before acceleration, foreclosure, and sale, must adhere to those obligations, with the level of specificity as agreed.

114.    In Massachusetts, the power to sell by foreclosure sale is derived from the mortgage and statute, and strict compliance with the requirements of paragraphs 19 & 22 of the mortgage is an obligation of the mortgagee. Failure send proper Notice of Default pursuant to paragraphs 22 & 19 as noted herein is a breach of mortgage contract renders any acceleration, attempted foreclosure, and sale of the subject property void.

115.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, allege that the notices sent purporting to state compliance with paragraph 22 of the Mortgages failed to contain the required information as described in said paragraph, contained a misleading statement that claimed that the Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure",  and further failed to state with specificity the conditions Class Plaintiffs are required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Mortgages.

116.     As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

117.     No default letter was sent to Class Plaintiffs pursuant to the terms of the mortgage. As such the Defendants could not exercise the statutory power of sale on their properties.

118.     Pursuant to the terms of the mortgages proper Notices of Default are a condition precedents to acceleration and the exercise of the statutory power of sale.

119.     Class Plaintiffs thus never received default acceleration notices pursuant to the terms of their mortgages.

120.     Due to these failures to comply with the terms of the mortgages, no entity was contractually authorized to exercise the statutory power of sale, foreclose, and sell the subject properties at mortgagee's foreclosure sale. These actions constituted breaches of the contracts, resulting in damages to the Class Plaintiffs.

121.     As a result of the above noted improper and invalid exercises of the statutory power of sale and purported foreclosure sales, Class Plaintiffs' mortgage loan accounts were charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

122.    The Class Plaintiffs have incurred damages in hiring attorneys, in regard to the improper actions of Defendants in sending a Notices of Foreclosure Sale and seeking to conduct sales without first complying with the terms of the mortgages in violation of G. L. c. 183, § 21 and in breach of their contracts.

123.    Class Plaintiffs have also incurred emotional injuries and damages due to the improper foreclosures of their homes without Defendants first complying with the terms of the mortgages and breaches of contracts.

124.    Class Plaintiffs have incurred legal fees for the prosecution of this action as a result of Defendants' violation of G. L. c. 183, § 21 due to the breaches of contracts by Defendants as noted herein.

125.    Class Plaintiffs have suffered harm and are threatened with additional harm from Defendants' breach, including but not limited to loss of property interests, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to their accounts, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

126.    The Defendants' breaches of contracts and failure to comply with terms of the mortgages as noted herein above, are the direct cause of the harms alleged herein and not Class Plaintiffs' failure to make their mortgage payments.

127.    Therefore, Class Plaintiffs would not have suffered foreclosure, sale, or the harms as noted herein were it not for the Defendants' breaches of the mortgage contracts as noted herein.

128.    The Defendants' failure to comply with the terms of the mortgages are a breaches of the mortgage contracts and also are in violation of G. L. c. 183, § 21. The foreclosure is therefore void.

U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

129.    The Class Plaintiffs are entitled to a declaratory judgment determining that the acceleration of all sums due under the notes, the foreclosures, and mortgagee's foreclosure sales of the subject properties are in breach of contract and all void.

130.    The Class Plaintiffs are entitled to an injunction preventing the transfer of the right, title, and interest in their properties.

131.    The Class Plaintiffs are entitled to cancellation costs and fees assessed to them for wrongful foreclosures, together with additional damages.

132.    The Class Plaintiffs are entitled to be returned to their status and circumstances prior to any wrongful acceleration, foreclosure and sale.

133.    The Class Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT IV
## VIOLATION OF M.G.L. c. 244 §35A

134.    Representative Plaintiffs, on behalf of themselves and all others so similarly situated, repeat and reincorporate all paragraphs above as if fully articulated herein.

135.    Pursuant to M.G.L. c. 244 §35A, Defendants Wells Fargo and Fannie Mae were required to notify Plaintiffs of "…the nature of the default claimed on such mortgage of such residential real property and of the mortgagor's right to cure the default by paying the sum of money required

to cure the default…before…accelerat[ing] the maturity of the unpaid balance of such mortgage

obligation or otherwise enforce[ing] the mortgage." (See: M.G.L. Ann. c. 244 §35A.). (Emphasis

Added).

136.    Representative Plaintiffs further allege that the default/right to cure letter failed to inform

Representative Plaintiffs that the right to reinstate after acceleration is to be done "prior to . . . five

days before the sale" in violation of M.G.L. ch 244 §35A(c)(2) which requires the Defendants to

notify the Representative Plaintiffs of "the date by which the mortgagor shall cure the default to

avoid . . . *a foreclosure or other action to seize the home*." (emphasis added).

137.    M.G.L. ch 244 §35A(d) also provides that "The Mortgagee, or anyone holding thereunder,

may also provide for reinstatement of the note after the 90 day notice to cure has ended."

138.    Defendants failure to notify the Plaintiffs of the right to reinstate after acceleration prior to

five days before the sale is also a violation of the notice provision provided in M.G.L. ch 244

§35A(d).

139.    Furthermore, "[W]here a homeowner who is facing foreclosure claims that the mortgage

holder has failed to provide timely and adequate written notice of the right to cure the default in

payment of the mortgage, in violation of § 35A, the homeowner may file an equitable action . . .

seeking to enjoin the foreclosure…[T]he foreclosure may not proceed if the mortgagor proves that

the mortgage holder has failed to give the required  notice…[In that case,] the mortgage holder

must provide the proper notice required by § 35A and wait to see if the borrower will cure the

default within the required time period before recommencing the foreclosure proceeding." (See:

U.S. Bank Nat. Ass'n v. Schumacher, 467 Mass. 421, 431 (2014)).

140.    Defendants sent what they purported to be right to cure notices pursuant to M.G.L. c. 244

§35A.  However, said notices materially misstated that the Class Plaintiffs could pay the "total

past due amount before a foreclosure sale take place…to avoid foreclosure" in contradiction to paragraph 19 of the Mortgages.

141.    As such, the Defendants failed to provide the Class Plaintiffs compliant Notices of Default/ Right to Cure in accordance with Mass. Gen. Laws Ch. 244 §35A in breach of their Mortgage contracts and are in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any default or right to cure notice with the above described verbiage, as well as any acceleration, any foreclosure notice, any foreclosure auction, and any foreclosure deed made subsequent to said void default/ right to cure notices void.

142.    Representative Plaintiffs, on behalf of themselves and all others so similarly situated, respectfully ask that this Honorable Court declare that any said default letter/ right to cure notices containing misleading statements that claim or imply that the Class Plaintiffs could pay the "total past due amount before a foreclosure sale take place…to avoid foreclosure" are null and void.

143.    Therefore, said notice is inadequate, ineffective, and fails to comply with M.G.L. c. 244 §35A in such a manner as to render any and all foreclosure actions subsequent to such right to cure notice fundamentally unfair.  As such, the acceleration and attempted foreclosure of the Class Plaintiffs' Mortgages and the attempted mortgagee's foreclosure sales are invalid, void, and without force and/or effect.

144.    Due to Defendants' failure to comply with M.G.L. c. 244 §35A, no entity was contractually authorized to exercise the statutory power of sale and attempt to foreclose on the Class Plaintiffs' Mortgages and sell their properties at mortgagee's foreclosure sale. These actions constituted breach of contracts, resulting in damages to the Plaintiff.

145.    As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiffs' mortgage loan accounts were charged fees and costs and

expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

146.    The Plaintiffs have incurred damages in hiring attorneys, in regard to the improper actions of Defendant in failing to send Class Plaintiffs proper and accurate notices of right to cure pursuant to M.G.L. c. 244 §35A, and seeking to conduct a foreclosures and sales without first complying with M.G.L. c. 244 §35A.

147.    Class Plaintiffs have also incurred emotional injuries and damages due to the improper foreclosure and sale of their homes without Defendant first complying with M.G.L. c. 244 §35A.

148.    The Class Plaintiffs have incurred legal fees for the prosecution of this action as a result of Defendant's violation of M.G.L. c. 244 §35A as noted herein.

149.    Class Plaintiff have suffered harm and are threatened with additional harm from Defendant's failure to abide by M.G.L. c. 244 §35A, including but not limited to potential loss of property interests, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

150.    The Defendant's failure to proper notice of Class Plaintiffs' rights to cure as noted herein above, is the direct cause of the harms alleged herein and not Class Plaintiffs' failure to make their mortgage payments.

151.    Therefore, Class Plaintiff would not have suffered the harms as noted herein were it not for the Defendant's failure to abide by statute as noted herein.

152.    The Class Plaintiffs are entitled to a declaratory judgment determining that the acceleration of all sums due under the notes, the attempted foreclosures, and the attempted mortgagee's foreclosure sales of the subject properties are all void.

153.    The Class Plaintiffs are entitled to an injunction preventing the transfer of the right, title, and interest in their properties.

154.    The Class Plaintiff are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

155.    Class Plaintiffs are entitled to be returned to their status and circumstances prior to the wrongful attempted foreclosures and sales.

156.    Class Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

Dated: March 14, 2019

Respectfully Submitted, Plaintiffs,
By their Attorney,
Todd S. Dion, Esq.

_/s/ Todd S. Dion_____
Todd S. Dion, Esq. (659109)
15 Cottage Avenue, Ste 202
Quincy, MA 02169
401-965-4131 Cell
401-353-1230 Phone
401-353-1231 Fax
toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2019.

/s/ Todd S. Dion_____